## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

JAMES K. MOONEY, JR. as
trustee for THE CASPER R.
CALLEN TRUST,

     Plaintiff,

v.                            Case No.:

NEIL MORRIS, an individual;
GEM VENTURES, INC., a
Florida Corporation; and GEM
ART HOLDINGS, LLC, a
Florida Limited Liability
Company,

     Defendants.

_____/

## COMPLAINT

Plaintiff, James K. Mooney, JR. as trustee for the Caper R. Callen Trust ("Plaintiff"), sues Defendants Neil Morris ("Morris"), Gem Ventures, Inc. ("Gem Ventures"), and Gem Art Holdings, LLC ("Gem Art"), and alleges as follows:

### General Allegations

1.    This is an action for damages that exceed $75,000.00, exclusive of interest, costs, and attorney's fees.

2.    Plaintiff is a resident of San Francisco County, California.

3.    Morris is a resident of Duval County, Florida.

4.     Gem Ventures is a Florida Corporation with its principal place of business located at 1713 Seabreeze Avenue, Jacksonville Beach, FL 32250.

5.     Gem Art is a Florida Limited Liability Company with its principal place of business located at 5150 Belfort Road, Building 100, Jacksonville, FL 32255.

6.     Venue is proper in this Court pursuant to 28 U.S.C. Section 1391 because a defendant is a Duval County resident, all Defendants are Florida residents, and because the events or omissions giving rise to Plaintiff's claims occurred in Duval County.

7.     At all times material to this Complaint, Morris has represented himself to Plaintiff as an art investment expert who specializes in procuring and selling art individually and on behalf of investors.

8.     As a purported art expert, Morris has presented Plaintiff with numerous art investment opportunities, sold art to Plaintiff, and otherwise advised Plaintiff concerning Plaintiff's art investment portfolio.

9.     Morris represented Gem Ventures and Gem Art to Plaintiff as the entities through which Morris engages in art investment activities, buying, holding, and selling artwork.

10.     On or about April 11, 2019, Plaintiff, and Morris, individually and on behalf of Gem Art, entered into an agreement ("Bierstadt Agreement") wherein Plaintiff purchased an interest in a 28 inch by 40 inch painting entitled "*Coast near

*Cliff House, San Francisco Bay,"* by Albert Bierstadt ("Bierstadt Painting").  A copy of the Bierstadt Agreement is attached as **Exhibit "A."**

11.     Pursuant to the terms of the Bierstadt Agreement, Morris and Gem Art sold, and Plaintiff purchased, a fifty percent (50%) interest in the Bierstadt Painting.

12.     Pursuant to the terms of the Bierstadt Agreement, Plaintiff purchased the fifty percent (50%) interest in the Bierstadt Painting at a purchase price of $110,000.00.

13.     On or about April 11, 2019, in connection with the Bierstadt Agreement, Morris and Gem Art delivered to Plaintiff a Promissory Note in the principal amount of $45,000.00 ("Bierstadt Promissory Note").  A copy of the Bierstadt Promissory Note is attached as **Exhibit "B."**

14.     On or about September 28, 2018, Plaintiff and Gem Ventures entered into a Purchase, Sale, and Security Agreement ("Alma-Tadema Agreement") wherein Plaintiff purchased an interest in the sale of a 34 inch by 54 inch oil on canvas painting entitled *The Mummy* by Lawrence Alma-Tadema, ("Alma-Tadema Painting"). A copy of the Alma-Tadema Agreement is attached as **Exhibit "C."**

15.     Pursuant to the terms of the Alma-Tadema agreement, Gem Ventures sold, and Plaintiff purchased, an "eight and one-half percent (8½%) interest in the proceeds of the sale of" the Alma-Tadema Painting ("Alma-Tadema Interest").

16.    Pursuant to the terms of the Alma-Tadema Agreement, Plaintiff purchased the Alma Tadema Interest at a purchase price of $500,000.00 and an associated Bill of Sale was produced ("Alma-Tadema Bill of Sale"). A copy of the Alma-Tadema Bill of Sale is attached as **Exhibit "D."**

17.    On or about October 1, 2018, in connection with the Alma-Tadema Agreement, Gem Ventures delivered to Plaintiff a Promissory Note in the principal amount of $35,000.00 ("Alma-Tadema Promissory Note"). A Copy of the Alma-Tadema Promissory Note is attached as **Exhibit "E."**

18.    In or around the end of 2017, Plaintiff and Morris entered into an agreement under which Plaintiff agreed to buy and Morris agreed to sell, "*View of the palisades on the Hudson*" by Jasper Francis Cropsey ("Cropsey Painting").

19.    In exchange for the Cropsey Painting, Plaintiff tendered two paintings to Morris: a painting by Emile Eisman-Semenosky and a painting by Edward Potthast (collectively "Traded Paintings").

20.    Plaintiff possessed the Cropsey painting from the end of 2017 to January 2019.

21.    In or around January 2019, Plaintiff agreed to allow Morris to take the Cropsey Painting from Plaintiff's possession in exchange for Morris advertising the Cropsey Painting for sale and presenting Plaintiff with offers for its purchase ("Cropsey Agreement").

22.    Under the terms of the Cropsey Agreement, Morris was to return the Cropsey Painting to Plaintiff upon Plaintiff's demand.

23.    Morris did not present Plaintiff with reasonable or acceptable offers to purchase the Cropsey Painting and Plaintiff denied any offers Morris presented to Plaintiff.

24.    Plaintiff has demanded the return of the Cropsey Painting from Morris.

25.    Despite Plaintiff's repeated demands, Morris has refused to return the Cropsey Painting.

<u>**COUNT I – BREACH OF CONTRACT**</u>
**(Bierstadt – Morris and Gem Art)**

26.    Plaintiff re-alleges the allegations in paragraphs 1 through 25 above.

27.    Plaintiff entered into the Bierstadt Agreement with Morris and Gem Art.

28.    Pursuant to the terms of the Bierstadt Agreement, the Bierstadt Painting was required to be "kept at Neil Morris' gallery located at 500 North Dixie Highway, Lake Worth, Florida 33460."

29.    Pursuant to the terms of the Bierstadt Agreement, the Bierstadt Painting was to be auctioned "at Sotheby's in their next auction for this type of painting."

30.    Gem Art and Morris have breached the Bierstadt Agreement, including through their failure to maintain the Bierstadt Painting in the agreed location.

31.     Gem Art and Morris have breached the Bierstadt Agreement by refusing to auction the Bierstadt Painting, despite Plaintiff's demands.

32.     Plaintiff has suffered damages as a result of Morris' and Gem Art's breach of the Bierstadt Agreement.

WHEREFORE, Plaintiff demands judgment against Morris and Gem Art for damages together with prejudgment interest, costs and attorney's fees and such further relief as the Court deems just and proper.

## COUNT II – Breach of Promissory Note
### (Bierstadt – Morris and Gem Art)

33.     Plaintiff re-alleges the allegations in paragraphs 1 through 25 above.

34.     This is an action against Morris and Gem Art for breach of the Bierstadt Promissory Note.

35.     Morris and Gem Art entered into the Bierstadt Promissory Note and promised to pay Plaintiff in accordance with the terms of the Bierstadt Promissory Note.

36.     Plaintiff owns and holds the Bierstadt Promissory Note and is entitled to collect it.

37.     Morris and Gem Art have refused to pay the sum due and owing under the Bierstadt Promissory Note or any part thereof.

38.     Morris and Gem Art owe Plaintiff $45,000.00 as principal and owe Plaintiff late fees, court costs, attorney's fees, and collection costs.

39.     Plaintiff has suffered damages due to Morris' and Gem Art's failure to pay under the Bierstadt Promissory Note.

WHEREFORE, Plaintiff demands judgment against Morris and Gem Art for damages together with prejudgment interest, costs and attorney's fees and such further relief as the Court deems just and proper.

## COUNT III – Reestablishment of a Lost Note
### (Bierstadt – Morris and Gem Art)

40.     Plaintiff re-alleges the allegations in paragraphs 1 through 25 above.

41.     This is an action to reestablish the Bierstadt Promissory Note pursuant to Section 673.3091, Florida Statutes.

42.     On or about April 11, 2019, Morris and Gem Art delivered the Bierstadt Promissory Note in the principal amount of $45,000.00.

43.     Plaintiff is not in possession of the original Bierstadt Promissory Note and Plaintiff cannot reasonably obtain possession of the original Bierstadt Promissory Note because it is lost, stolen, or destroyed.

44.     Plaintiff had the right to enforce the Bierstadt Promissory Note when the loss of possession occurred.

45.     The loss of possession of the original Bierstadt Promissory Note was not the result of a lawful transfer or due to lawful seizure.

46.     Plaintiff can prove the terms and conditions of the subject Bierstadt Promissory Note by virtue of the copy attached hereto. *See* Exhibit B.

WHEREFORE, Plaintiff requests this Court enter an order reestablishing the lost Bierstadt Promissory Note so the copy filed herein will have the effect of the original instrument and award damages and attorney's fees, costs, interest, advances, and such further relief this court deems just and proper.

### COUNT IV – Unjust Enrichment
### (Bierstadt – Morris and Gem Art)

47.     Plaintiff re-alleges the allegations in paragraphs 1 through 25 above.

48.     Plaintiff has conferred a benefit on Morris and Gem Art in the amount of the principal of the Bierstadt Promissory Note, $45,000.00.

49.     Morris and Gem Art have knowledge of the benefit conferred.

50.     Morris and Gem Art voluntarily accepted and retained the benefit Plaintiff conferred.

51.     The circumstances are such that it would be inequitable for Morris and Gem Art to retain the benefit without paying the value thereof to Plaintiff.

WHEREFORE, Plaintiff demands judgment for damages against Morris and Gem Art together with prejudgment interest, costs and such further relief this Court deems just and proper.

### COUNT V – Money Lent
### (Bierstadt – Morris and Gem Art)

52.     Plaintiff re-alleges the allegations in paragraphs 1 through 25 above.

53.     Plaintiff lent money to Morris and Gem Art.

54.     Morris and Gem Art have failed and refused to repay and refuse to repay Plaintiff.

55.     Morris and Gem Art owe Plaintiff $45,000.00 as principal, plus late fees, interest, court costs, and attorney's fees.

WHEREFORE, Plaintiff demands judgment for damages against Morris and Gem Art together with prejudgment interest, costs and such further relief this Court deems just and proper.

## COUNT VI – Lien Foreclosure
### (Bierstadt – Morris and Gem Art)

56.     Plaintiff re-alleges and incorporates the allegations in paragraphs 1 through 25 above.

57.     This is an action to foreclose a lien on the Bierstadt Painting pursuant to Section 78.055, Florida Statutes.

58.     Morris and Gem Art own a fifty percent (50%) interest in the Bierstadt Painting.

59.     Plaintiff has a lien on the Bierstadt Painting pursuant to the terms of the Bierstadt Promissory Note.

60.     Plaintiff's lien on the Bierstadt Painting is in the amount of $45,000 plus accrued interest, attorney's fees, and costs pursuant to the terms of the Bierstadt Promissory Note.

61.    Plaintiff's lien on the Bierstadt Painting is superior to any interest Defendants have in the Bierstadt Painting.

62.    Morris and Gem Art have refused to remit the amount of Plaintiff's lien and to otherwise satisfy Plaintiff's lien.

63.    Morris and Gem Art owe the full value of Plaintiff's lien and Plaintiff is entitled to collect it.

WHEREFORE, Plaintiff demands judgment against Morris and Gem Art foreclosing its lien on the Bierstadt Painting and for damages together with prejudgment interest, costs and attorney's fees and such further relief as the Court deems just and proper.

## COUNT VII – Replevin
### (Bierstadt – Morris and Gem Art)

64.    Plaintiff re-alleges the allegations in paragraphs 1 through 25 above.

65.    This is an action for Replevin of the Bierstadt Painting pursuant to Section 78.055, Florida Statutes.

66.    Morris and Gem Art are in possession of the Bierstadt Painting.

67.    Upon information and belief, the Bierstadt Painting is worth $220,000.00.

68.    Upon information and belief, the Bierstadt Painting is located in Duval County, Florida.

69.     Plaintiff is the owner of fifty percent (50%) of the Bierstadt Painting and has a lien on Morris and Gem Art's interest in the other fifty percent (50%) of the Bierstadt Painting pursuant to the terms of the Bierstadt Agreement and the Bierstadt Promissory Note.

70.     Plaintiff is entitled to possess the Bierstadt Painting.

71.     Morris and Gem Art are wrongfully in possession of the Bierstadt Painting and have retained the Bierstadt Painting despite Plaintiff's demands.

72.     The Bierstadt Painting has not been taken for tax, assessment, or fine pursuant to law.

73.     The Bierstadt Painting has not been taken under an execution or attachment against the property of the Plaintiff.

WHEREFORE, Plaintiff demands judgment against Morris and Gem Art for damages together with prejudgment interest, costs and attorney's fees, entitling Plaintiff to immediate possession of the Bierstadt Painting, and such further relief as the Court deems just and proper.

## COUNT VIII – Fraudulent Inducement
### (Alma-Tadema – Morris and Gem Ventures)

74.     Plaintiff re-alleges the allegations in paragraphs 1 through 25 above.

75.     Prior to entering the Alma-Tadema Agreement, Morris and Gem Ventures made a series of false representations to Plaintiff, including that:

    a. Morris and Gem Ventures intended to sell the Alma-Tadema Painting;

    b. Morris and Gem Ventures would use their best efforts to sell the Alma-Tadema Painting quickly;

    c. the Alma-Tadema Painting was more valuable than it was;

    d. the Alma-Tadema painting was worth approximately $10,000,000.00 at the time the Alma-Tadema Agreement was entered;

    e. Plaintiff would have priority on repayment of the funds it advanced under the Alma-Tadema Agreement.

("Representations")

76. Morris and Gem Ventures made the Representations with the intent to induce Plaintiff into entering into the Alma-Tadema Agreement.

77. At the time Morris and Gem Ventures made the Representations, Morris and Gem Ventures knew, or should have known, that such Representations were false.

78. At the time Morris and Gem Ventures made the Representations, Morris and Gem Ventures intended for Plaintiff to rely upon the Representations in entering into the Alma-Tadema Agreement.

79. The Representations were material to the Alma-Tadema Agreement.

80.     Plaintiff relied upon Morris' and Gem Ventures' Representations when entering into the Alma-Tadema Agreement.

81.     Plaintiff suffered damages from its reliance on Morris' and Gem Ventures' false Representations.

WHEREFORE, Plaintiff demands judgment for damages against Morris and Gem Ventures together with prejudgment interest, costs and such further relief this Court deems just and proper.

## COUNT IX – Fraudulent Misrepresentation
## (Alma-Tadema – Morris and Gem Ventures)

82.     Plaintiff re-alleges the allegations in paragraphs 1 through 25 above.

83.     Gem Ventures and Morris made the Representations to Plaintiff.

84.     The Representations were material to the Alma-Tadema Agreement.

85.     Gem Ventures and Morris knew the Representations were false when they made the Representations to Plaintiff.

86.     Gem Ventures and Morris made the Representations to Plaintiff with the intention to induce Plaintiff to rely on the Representations.

87.     Plaintiff suffered damages in its reliance on Gem Ventures' and Morris' false Representations to Plaintiff.

WHEREFORE, Plaintiff demands judgment for damages against Gem Ventures and Morris together with prejudgment interest, costs and such further relief this Court deems just and proper.

## COUNT X – Breach of Promissory Note
### (Alma-Tadema – Gem Ventures)

88.   Plaintiff re-alleges the allegations in paragraphs 1 through 25 above.

89.   This is an action against Gem Ventures for breach of the Alma-Tadema Promissory Note.

90.   Gem Ventures entered into the Alma-Tadema Promissory Note and promised to pay Plaintiff in accordance with the terms of the Alma-Tadema Promissory Note.

91.   Plaintiff owns and holds the Alma-Tadema Promissory Note and is entitled to collect it.

92.   Gem Ventures has refused to pay the sum due and owing under the Alma-Tadema Promissory Note or any part thereof.

93.   Gem Ventures owes Plaintiff $35,000.00 as principal and owes Plaintiff late fees, court costs, attorney's fees, and collection costs.

94.   Plaintiff has suffered damages due to Gem Ventures' failure to pay under the Alma-Tadema Promissory Note.

WHEREFORE, Plaintiff demands judgment against Defendant for damages together with prejudgment interest, costs and attorney's fees and such further relief as the Court deems just and proper.

## COUNT XI – Reestablishment of a Lost Note
### (Alma-Tadema – Gem Ventures)

95.     Plaintiff re-alleges the allegations in paragraphs 1 through 25 above.

96.     This is an action to reestablish the Alma-Tadema Promissory Note pursuant to Section 673.3091, Florida Statutes.

97.     On or about April 11, 2019, Gem Ventures delivered the Alma-Tadema Promissory Note in the principal amount of $35,000.00.

98.     Plaintiff is not in possession of the original Alma-Tadema Promissory Note and Plaintiff cannot reasonably obtain possession of the original Alma-Tadema Promissory Note because it is lost, stolen, or destroyed.

99.     Plaintiff had the right to enforce the Alma-Tadema Promissory Note when the loss of possession occurred.

100.    The loss of possession of the original Alma-Tadema Promissory Note was not the result of a lawful transfer or due to lawful seizure.

101.    Plaintiff can prove the terms and conditions of the subject Alma-Tadema Promissory Note by virtue of the copy attached hereto. *See* Exhibit E.

WHEREFORE, Plaintiff requests this Court enter an order reestablishing the lost Alma-Tadema Promissory Note so the copy filed herein will have the effect of the original instrument and award damages and attorney's fees, costs, interest, advances, and such further relief this court deems just and proper.

## COUNT XII – Unjust Enrichment
### (Alma-Tadema – Gem Ventures)

102.   Plaintiff re-alleges the allegations in paragraphs 1 through 25 above.

103.   Plaintiff has conferred a benefit on Gem Ventures in the amount of the principal of the Alma-Tadema Promissory Note, $35,000.00.

104.   Gem Ventures has knowledge of the benefit conferred.

105.   Gem Ventures voluntarily accepted and retained the benefit Plaintiff conferred.

106.   The circumstances are such that it would be inequitable for Gem Ventures to retain the benefit without paying the value thereof to Plaintiff.

WHEREFORE, Plaintiff demands judgment for damages against Gem Ventures together with prejudgment interest, costs and such further relief this Court deems just and proper.

## COUNT XIII – Money Lent
### (Alma-Tadema – Gem Ventures)

107.   Plaintiff re-alleges the allegations in paragraphs 1 through 25 above.

108.   Plaintiff lent money to Gem Ventures.

109.   Gem Ventures has failed and refused to repay and refuses to repay Plaintiff.

110.   Gem Ventures owe Plaintiff $35,000.00 as principal, plus late fees, interest, court costs, and attorney's fees.

WHEREFORE, Plaintiff demands judgment for damages against Gem Ventures together with prejudgment interest, costs and such further relief this Court deems just and proper.

## COUNT XIV – BREACH OF CONTRACT
### (Cropsey – Morris)

111.   Plaintiff re-alleges the allegations in paragraphs 1 through 25 above.

112.   In or around the end of 2017, Morris and Plaintiff entered into the Cropsey Agreement.

113.   Pursuant to the terms of the Cropsey Agreement, Morris was obligated to use reasonable efforts to quickly sell the Cropsey Painting.

114.   Pursuant to the terms of the Cropsey Agreement, Morris was to provide the Cropsey Painting to Plaintiff upon Plaintiff's demand.

115.   Morris has breached the Cropsey Agreement through his failure to provide the Cropsey Painting to Plaintiff upon Plaintiff's demand.

116.   Morris has breached the Cropsey Agreement by failing to act reasonably in attempting to sell the Cropsey Painting.

117.   Plaintiff has suffered damages as a result of Morris' breach of the Cropsey Agreement.

WHEREFORE, Plaintiff demands judgment against Morris for damages together with prejudgment interest and for such further relief this Court deems just and proper.

## COUNT XV – Replevin
### (Cropsey – Morris)

118.   Plaintiff re-alleges the allegations in paragraphs 1 through 25 above.

119.   This is an action for Replevin of the Cropsey Painting pursuant to Section 78.055, Florida Statutes.

120.   Morris is in possession of the Cropsey Painting.

121.   Upon information and belief, the Cropsey Painting is located in Duval County, Florida.

122.   Plaintiff is the owner of the Cropsey Painting.

123.   Plaintiff is entitled to possess the Cropsey Painting.

124.   Morris is wrongfully in possession of the Cropsey Painting and has retained the Cropsey Painting despite Plaintiff's demands.

125.   The Cropsey Painting has not been taken for tax, assessment, or fine pursuant to law.

126.   The Cropsey Painting has not been taken under an execution or attachment against the property of the Plaintiff.

WHEREFORE, Plaintiff demands judgment against Morris for damages together with prejudgment interest, costs and attorney's fees, entitling Plaintiff to immediate possession of the Cropsey Painting, and for such further relief this Court deems just and proper.

**JIMERSON BIRR, P.A.**


By: /s/ Brandon C. Meadows
Brandon C. Meadows
Florida Bar No. 114246
bmeadows@jimersonfirm.com
Zachary Pestcoe
Florida Bar No. Pending
zpestcoe@jimersonfirm.com
One Independent Drive
Suite 1400
Jacksonville, FL 32202
Telephone: (904) 389-0050
Facsimile: (904) 212-1269
fileclerk@jimersonfirm.com
*Attorneys for Plaintiff*


## NOTICE OF E-MAIL DESIGNATION

Plaintiff designates the following email addresses for service of court documents by electronic means in accordance with the Florida Rules of Judicial Administration:

Brandon C. Meadows:  bmeadows@jimersonfirm.com (primary)
jenniferf@jimersonfirm.com (secondary)
fileclerk@jimersonfirm.com (tertiary)

Zachary Pestcoe:  zpestcoe@jimersonfirm.com (primary)
jenniferf@jimersonfirm.com (secondary)
fileclerk@jimersonfirm.com (tertiary)

EXHIBIT "A"

## Agreement

The Casper R. Callen Trust (CRC Trust) will buy a 50% interest in the Bierstadt painting owned by Gem Art Holdings, Inc., known as "Coast near Cliff House, San Francisco Bay" (photo of painting is attached as an exhibit) for $110,000.00, which is one half of the $220,000.00 that Gem Art Holdings, Inc. represents that it paid for it. From this sum Neil Morris will pay off his loan from Winter Haven Hotel Investors, LLC, in the amount of ninety thousand dollars ($90,000.00), see attached outline regarding Winter Haven debt. In addition, the Casper R. Callen Trust will lend Gem Art Holdings, Inc. forty five thousand dollars ($45,000.00); a copy of the Note is attached to this agreement.

The undersigns must commit to auctioning the painting at Sotheby's in their next auction for this type of painting. Until that painting is sent to Sotheby's, the Bierstadt painting will be kept at Neil Morris' gallery located at 500 North Dixie Highway, Lake Worth, Florida 33460. The CRC Trust will cover the painting with insurance in the amount of $500,000.00 and will be reimbursed for this expense from the proceeds of the auction. Gem Art Holdings, Inc. will arrange for the purchase of a frame for the painting and will be reimbursed for it from the proceeds of the auction. After these costs, the proceeds from the auction, the first $110,000.00 will go to the CRC Trust and the second $110,000.00 will go to Gem Art Holdings, LLC, the profit will go 2/3 to Gem Art Holdings, LLC and 1/3 to the CRC Trust.

If you agree with this, please sign this agreement. If it is felt we need a more explicit agreement have your attorney draw it up and the Casper R. Callen Trust will pay ½ the legal bill or we will have Robert McCorkle, Esq. draw it up and we will split his legal costs that will be very reasonable.

The undersigns approve this transaction.

_____          _____
Gem Art Holdings, Inc.                    date

_____          _____
Neil Morris, personal guaranty            date

_____          4/11/2010
Casper R. Callen Trust                    date

RE:  Debt owed to Winter Haven Hotel Investors, LLC

I, Neil Morris, hereby grant permission to the Casper R. Callen Trust to pay off my existing debt to Winter Haven Hotel Investors, LLC in the amount of $90,000.00 from the proceeds at the sale of the Albert Bierstadt painting known as "Coast near Cliff House, San Francisco Bay". This Bierstadt painting is being actively marketed now and is linked to a Promissory Note and Agreement to the Casper R. Callen Trust dated April 11, 2019.


I acknowledge the above and grant permission:

_____          4/11/19
Neil Morris, individually                        date

# PROMISSORY NOTE

April 11, 2019
$45,000.00

     FOR VALUE RECEIVED, GEM ART HOLDING, INC., (collectively, "Maker"), promises to pay to the order of **CASPER R. CALLEN TRUST (CRC Trust)**, its successors and assigns ("Holder") the principal sum of Forty five Thousand and no/100 Dollars ($45,000.00) payable with interest as set forth below, without offset or deduction in lawful money of the United States of America which shall at the time of payment be legal tender in payment of all debts and dues, public and private, as follows:

    1.    Interest Rate and Payments.

        1.1    Payments.  The principal amount hereof from time to time outstanding until June 1, 2019, shall no interest thereon being but is due and payable in full on or before June 1, 2019.

        1.2    Late Charge.  If payment is not received from the Holder by its due date, Maker shall pay Holder a late charge penalty of TEN THOUSAND DOLLARS ($10,000.00) and Holder shall not be obligated to accept any past due installment not accompanied by such late charge.

    2.    Attorneys' Fees.  Maker promises to pay all costs of collection, including reasonable attorneys' fees of fifteen (15%) percent of the outstanding principal and interest, if this Note is collected by or through an attorney at law.

    3.    Loan Documents.  The indebtedness evidenced by this Note and any other documents executed in connection herewith hereinafter referred to collectively as the "Loan Documents").

    4.    Gem Art Holdings, Inc. represents they will own ½ of the painting by Albert Bierstadt known as "Coast near Cliff House, San Francisco Bay" and hereby grants a lien on this ½ interest of the painting as security of this loan from the CRC Trust until the Note has been paid in full.

    5.    Prepayment.  This Note may be prepaid in whole or in part with no penalties.

    6.    Default.  If Maker (i) fails to make any of the payments required by this Note or the Loan Documents on the date due; (ii) fails to perform any covenants or provisions of any of the Loan Documents (or if an event of default occurs pursuant to any of the Loan Documents) and such failure is not cured within thirty (30) days of receipt of written notice of such failure; (iii) becomes insolvent, commits any act of bankruptcy, fails to dismiss an involuntary petition of bankruptcy within thirty (30) days of its filing; or (iv) should have a receiver appointed for any of its property, then, in any such event, at the option of the Holder hereof, at any time thereafter, without further notice or demand, the unpaid principal of this Note and all accrued interest, shall at once become due and payable and the unpaid principal shall bear interest at the Default Rate (as hereinafter defined) thereafter.  Failure to exercise any of said options shall not constitute a waiver on the part of Holder of the right to exercise the same at any other time.  "Default Rate" shall mean an interest rate which is five (5) percentage points per annum above the otherwise applicable interest rate pursuant to this Note.

7.      If this Note is not paid on June 1, 2019, it's due for $45,000.00 principle plus the $10,000.00 late charge will become a lien on the one half interest owned by the maker, Gem Art Holdings, Inc., of a painting by Albert Bierstadt known as "Coast near Cliff House, San Francisco Bay". A picture is attached to this document.

8.      Notices.  All notices, demands or requests hereunder shall be given in writing and hand delivered, sent by certified mail or telecopy to the following addresses:

| | |
|---|---|
| Holder: | Casper R. Callen Trust<br>618 East Broughton Street<br>Savannah, Georgia 31401 |
| Maker: | Gem Art Holdings, Inc.<br>4446 Hendricks Avenue<br>Jacksonville, Florida 33207 |

9.      Waiver.   Maker and Maker's successors and assigns hereby expressly waive presentment for payment, demand, notice of demand, notice of dishonor, protest, notice of protest, diligence in collection and all other notices or demands whatsoever with respect to this Note or the enforcement hereof except as expressly provided for herein, and hereby consents to any and all indulgences granted by Holder, or any substitution, exchange or release of collateral permitted by Holder, all without in any way modifying, altering, releasing, affecting or limiting the validity of the indebtedness evidenced hereby or impairing any of Holder's rights following a default hereunder.  No failure to accelerate the debt evidenced hereby by reason of default from time to time shall be construed (i) as a novation of this Note or as a reinstatement of the indebtedness evidenced hereby or as a waiver of such right of acceleration or of the right of Holder thereafter to insist upon strict compliance with the terms of this Note, or (ii) to prevent the exercise of such right of acceleration or any other right granted hereunder or by the laws of the United States or any State thereof; and Maker hereby expressly waives the benefit of any statute or rule of law or of equity now provided, or which may hereafter be provided, which would produce a result contradictory to or in conflict with the foregoing.  No extension of the time for payment of this Note or any installment due hereunder, made by agreement with any person now or hereafter liable for the payment of this Note, shall operate to release, discharge, modify, change or affect the original liability of Maker under this Note, either in whole or in part, unless Holder agrees otherwise in writing.  This Note may not be changed orally, but only by agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

10.     Exemptions   Maker hereby waives and renounces for Maker and Maker's heirs, executors, successors and assigns, all rights to the benefits of any statute of limitations and any moratorium, reinstatement, marshaling, forbearance, valuation, stay, extension, redemption, appraisement, exemption or homestead now provided, or which may hereafter be provided by the Constitution or laws of the Untied States of America or of any State thereof to and in their property, real and personal, against the enforcement and collection of the obligations evidenced by this Note. Maker hereby transfers, conveys and assigns to the Holder a sufficient amount of such homestead or exemption as may be set apart in bankruptcy, to pay this Note in full, with all costs of collection, and does hereby direct any trustee in bankruptcy having possession of such homestead or exemption to deliver to the Holder a sufficient amount of property or money set apart as exempt to pay the

indebtedness evidenced hereby, or any renewal hereof, and does hereby irrevocably appoint the Holder the attorney-in-fact for the Maker to claim any and all homestead exemptions allowed by law.

11.     <u>Governing Law and Related Matters</u>.  This Note is intended to constitute a contract under and shall be construed, interpreted and enforced in accordance with the laws of the State of Florida.  If any provision of this Note shall be deemed unenforceable under applicable law, such provision shall be ineffective, but only to the extent of such unenforceability, without invalidating the remainder of such provision or the remaining provisions of this Note.  If more than one person signs this Note as a maker, each shall be jointly and severally liable hereunder.  All of the terms and provisions of this Note shall be applicable to and be binding upon each and every maker, endorser, surety, guarantor and all other persons who are or may become liable for the payment hereof and their heirs, personal representatives, successors or assigns.

12.     <u>Avoidance of Usury</u>.  If from any circumstances whatsoever, fulfillment of any provision of this Note or of any other instrument evidencing or securing the indebtedness evidenced hereby, at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, then <u>ipso facto,</u> the obligation to be fulfilled shall be reduced to the limit of such validity, so that in no event shall any exaction be possible under this Note or under any other instrument evidencing or securing the indebtedness evidenced hereby, that is in excess of the current limit of such validity, but such obligations shall be fulfilled to the limit of such validity.  In determining whether or not the rate of interest hereunder exceeds the highest lawful rate, Maker and Holder agree and intend that all sums paid hereunder which are deemed interest for the purposes of determining usury, shall be prorated, allocated or spread in equal parts over the longest period of time permitted under the applicable laws of the State of Florida.

13.     <u>Time of Essence</u>.  Time is of the essence of this Note.

14.     <u>Inurement</u>.  This Note shall bind and inure to the benefit of Maker and Holder and their respective heirs, executors, successors, assigns and legal representatives, whether by voluntary action or by operation of law.

15.     <u>Captions</u>.  The captions of the paragraphs of this Note are for convenience only and are not intended to be nor shall be construed as being a part hereof and shall not limit, expand or otherwise affect any of the terms hereof.

[Signature page follows]

SIGNED, SEALED AND DELIVERED by Maker as of the day and year first above set forth.

By: _____

Neil Morris on behalf of
Gem Art Holdings, Inc.

Personal Guaranty:

By: _____

Neil Morris, individually

Q:\DATA\WPDATA\8000\8070-01 Promissory Note.docx

EXHIBIT "C"

## PURCHASE, SALE AND SECURITY AGREEMENT

THIS **PURCHASE, SALE AND SECRURITY AGREEMENT** (this "Agreement") is made this _____ day of _____, 2018 (the "Effective Date"), by and between **GEM VENTURES, INC.**, a Florida corporation ("Seller") and **THE CASPER R. CALLEN TRUST** (the "Trust"), for the work of art (the "Work") identified as follows:

| | |
|---|---|
| **Artist:** | **Lawrence Alma-Tadema** |
| **Title:** | **The Mummy** |
| **Medium:** | **Oil on Canvas** |
| **Dimensions:** | **34" x 54"** |

FOR AND IN CONSIDERATION of Ten Dollars ($10.00) in hand paid, other good and valuable consideration and the covenants and agreements set forth herein, Seller and the Trustee agree as follows:

1. <u>Purchase and Sale</u>. Seller agrees to sell an eight and one-half percent (8½%) interest in the proceeds of the sale of the Work to the Trust, and the Trust agrees to buy an eight and one-half percent (8½%) interest in the proceeds of the sale of the Work from Seller, subject to the terms and conditions set forth in this Agreement. Additionally, Seller agrees to privately sell or auction the Work on or before the date one (1) year from the Effective Date pursuant to the terms and conditions set forth in this Agreement.

2. <u>Purchase Price and Manner of Payment</u>. The purchase price for an eight and one-half percent (8½%) interest in the proceeds of the sale of the Work (the "Purchase Price") is Five Hundred Thousand Dollars ($500,000.00). The Trust will pay the Purchase Price as follows:

     a.    Credit for the Two Hundred Thirty-Five Thousand Three Hundred Seventy-Seven Dollars ($235,377.00) debt acknowledge by Seller to be owed to the Trust; and

     b.    Payment of Two Hundred Sixty-Four Thousand Six Hundred Twenty-Three Dollars ($264,623.00) within three (3) business days of the Effective Date.

3. <u>Seller's Representations and Warranties</u>.

     a.    Seller represents and warrants to the Trust that:

         (i)    The Work is authentic and was created by Lawrence Alma-Tadema (the "Artist").

         (ii)    Seller has full legal right and authority to enter into this Agreement, to make the representations and warranties contained in this Agreement and to complete all transactions contemplated by this Agreement, and to execute and deliver the bill of sale

in the form attached hereto as <u>Exhibit A</u>, transferring an eight and one-half percent (8½%) interest in proceeds from the sale of the Work.

(iii)   The Work's exportation from any foreign country has been in conformity with the laws of that country and its importation into the United States has been, in conformity with the laws of the United States.

(iv)   Seller is the sole and absolute owner of the Work and has good and marketable title to the Work, and the Work, at the time of transfer of title of the interest sold hereby, will be free and clear of any and all rights, claims, liens, mortgages, security interests, or other encumbrances held by any person or entity.

(v)   Seller has no knowledge of any claims, threatened or pending, nor knowledge of any facts or circumstances likely to give rise to, any claims of rights, title, interest, restrictions, options, or other encumbrances, on the Work.

(vi)   The Work is currently located at the studio of David Bull, located at 17 E 76th Street, New York, New York 10021, for cleaning and restoration.

(vii)   The Work is currently and will remain insured for not less than $3,000,000.00

b.      Seller will indemnify, defend, and hold the Trust harmless from any and all demands, claims, suits, judgments, obligations, damages, losses, or other liability including all attorney's fees and other costs, fees, and expenses, suffered or incurred by, or asserted or alleged against, the Trust arising by reason of or in connection with, Seller's breach, falsity, or inaccuracy in any representation or warranty contained in this Agreement.

c.      The benefits of the representations, warranties, covenants, and indemnities contained in this Agreement shall survive completion of the transaction contemplated by this Agreement.

4.      <u>Documentation Relating to the Work</u>. Seller agrees to transfer to the Trust copies of all documentation, and share with the Trust all information, if any, relating to the Work including the prior ownership, display and restoration of the Work.

5.      <u>Condition of the Work</u>.  The Trust shall have the right to have the Work inspected by such restorers, bankers and other such persons as shall be determined by the Trust, at the Trust's expense.

6.      <u>Sale of the Work</u>.  Seller covenants and agrees to sell the Work through private sale or auction with Sotheby's auctions in New York on or before the date one (1) year from the Effective Date. Seller will use its best efforts to achieve maximum value for the Work.

Notwithstanding the foregoing, the management and control of the Work and all decisions with respect to its care and sale, including cleaning and storage, shall be vested in Seller. Proceeds from the sale, after payment of any auction commission, shall be delivered to the client trust account of Ansbacher & Schneider, P.A. and shall be distributed as follows:

      a.    Upon the sale of the Work by GEM, the proceeds shall be held in escrow in the Ansbacher & Schneider, P.A. trust account until distribution pursuant to the terms of this Agreement pursuant to the Escrow Agreement attached hereto as Exhibit B.

      b.    Within ten (10) days of the sale of the Work, the Trust shall receive, before any other distributions to other investors, Five Hundred Thirty-Five Thousand Dollars ($535,000.00) as a first priority repayment of its investment and repayment of an additional Thirty-Five Thousand Dollar ($35,000.00) debt owed to the Trust pursuant to a Promissory Note dated _____, 201_ , and then eight and one-half percent (8½%) of the price of the painting in excess of Three Million Dollars ($3,000,000.00). There should be no deductions for commissions, restoration or cleaning of the Work. The ten (10) days can be extended for up to thirty (30) days if the payment has not been received by the auction house from the purchaser.

7.    Security Agreement.  To secure the prompt and complete payment, performance and observance of all of the terms and conditions of this Agreement, Seller hereby grants, assigns, conveys, mortgages, pledges, hypothecates and transfers to the Trust, a continuing security interest in all of its right, title and interest in, to and under the Work and all proceeds therefrom (the "Collateral"). Seller hereby irrevocably authorizes the Trust at any time and from time to time to file in any filing office in any Uniform Commercial Code jurisdiction any initial financing statements and amendments thereto that (a) indicate the Collateral, and (b) contain any other information required by part 5 of Article 9 of the applicable Commercial Code for the sufficiency or filing office acceptance of any financing statement or amendment.

8.    Confidentiality.  Neither the Trust nor Seller will disclose the Purchase Price or other terms of this Agreement to any third party (except advisors or consultants with a need to know) without the other's written consent, except as necessary to carry out the terms of this Agreement or as may be required by law. The terms of this Paragraph shall survive the closing of title or termination of this Agreement for any reason. The parties further agree that the Trust must approve any press release about this acquisition prior to release.

9.    Miscellaneous. This Agreement represents the entire understanding of the parties concerning the subject matter herein and supersedes any and all other and prior agreements concerning the subject matter between the parties. The terms of this Agreement may not be modified or amended, except in a writing signed by the party to be charged. This Agreement and all matters relating to it shall be governed by the laws of the State of New York. This Agreement shall inure to the benefit of, and shall be binding upon, the successors, heirs, executors and administrators of the parties hereto. Any dispute arising hereunder shall be resolved in the courts

of the State of New York, and the parties consent to the personal jurisdiction of those Courts, provided, however, that the parties hereto agree that they will make concerted efforts to settle any dispute between them in an amicable manner without the necessity of litigation. This Agreement may be executed in counterparts. Each individual executing the Agreement on behalf of a party has the full right and authority to bind the party to the representations, warranties and obligations contained in this Agreement.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date first written above.

**SELLER:**

GEM VENTURES, INC.,
a Florida corporation

By: _____

Name: _____

Title: _____

[Corporate Seal]

**TRUST:**

THE CASPER R. CALLEN TRUST

By: _____

Name:   Robinson Callen
Title:   Trustee

Acknowledged and agreed to by escrow
agent:

Ansbacher & Schneider, P.A.

By: _____

Name: MICHAEL SCHNEIDER

Title: PRESIDENT

5

## BILL OF SALE

THIS **BILL OF SALE** (this "Bill of Sale") is made as of the 28th day of _SEPTEMBER_, 2018, by and between **GEM VENTURES, INC.**, a Florida corporation ("Grantor") and **THE CASPER R. CALLEN TRUST** ("Grantee").

## W I T N E S S E T H:

**WHEREAS,** pursuant to the terms and conditions of that certain Purchase, Sale, and Security Agreement (the "Agreement") dated as of _SEPTEMBER 28_, 2018, Grantor and Grantee intend that an eight and one-half percent (8½%) interest in the proceeds of the sale of the Work, as defined as in the Agreement, be conveyed to Grantee.

**NOW, THEREFORE,** in consideration of the foregoing premises, the sum of Ten and No/100 Dollars ($10.00) in hand paid by Grantee to Grantor at and before the execution, sealing and delivery hereof, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Grantor does hereby convey and agree, and Grantee does hereby agree, as follows:

1.    All capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Agreement.

2.    Grantor does hereby grant, bargain, sell and convey unto Grantee all of the right, title and interest of Grantor in and to an eight and one-half percent (8½%) interest in proceeds from the sale of the Work (the "Asset");

3.    TO HAVE AND TO HOLD the Asset unto said Grantee and its respective successors and assigns, forever.

4.    Grantor does hereby covenant and agree to and with the said Grantee and its successors and assigns, that the Asset sold, conveyed and transferred hereby, is free and clear of any and all liens and encumbrances whatsoever; that Grantor is the true and lawful owner thereof and has good and legal title, right and lawful authority to bargain and sell the Asset in manner and form as aforesaid, and that it and its assigns shall warrant and defend the title to same against the lawful claims and demands of all persons whomsoever.

5.    This Bill of Sale shall be binding upon and enforceable against, and shall inure to the benefit of, the parties hereto and their respective successors, legal representatives and assigns.

6.    This Bill of Sale shall be governed by, construed under and interpreted and enforced in accordance with the laws of the State of Georgia.

**IN WITNESS WHEREOF,** Grantor has caused its duly authorized representative, to execute, seal and deliver this Bill of Sale, and Grantee has caused its duly authorized representative to execute, seal and accept delivery of this Bill of Sale, all the day and year first written above.

**GRANTOR:**

GEM VENTURES, INC.,
a Florida corporation

By: _____
Name: _____
Title: _____

[Corporate Seal]

**GRANTEE:**

THE CASPER R. CALLEN TRUST

By: _____
Name:   Robinson Callen
Title:   Trustee

EXHIBIT B

(THE ESCROW AGREEMENT WILL BE PREPARED AND EXECUTED IMMEDIATELY PRIOR TO THE EXECUTION AND CLOSING OF THE SALE OF THE WORK AS DESCRIBED IN THE AGREEMENT TO WHICH THIS EXHIBIT HAS BEEN ATTACHED.)

EXHIBIT "E"

## PROMISSORY NOTE

October _ɪ_ , 2018
$35,000.00                                                          Savannah, Georgia

FOR VALUE RECEIVED, **Gem Ventures, Inc.**, a Florida corporation ("Maker"), promises to pay to the order of **The Casper R. Callen Trust**, their successors and assigns ("Holder") the principal sum of Thirty-Five Thousand and no/100 Dollars ($35,000.00) payable as set forth below, without offset or deduction in lawful money of the United States of America which shall at the time of payment be legal tender in payment of all debts and dues, public and private, as follows:

    1.    Payment.

    1.1    Payment. The principal amount hereof from time to time outstanding shall bear simple interest at the rate of four percent (4%) per annum and shall be paid on demand.

    1.2    Late Charge. If any payment is not received by Holder within ten (10) days after the date of demand, Maker shall pay Holder a late charge equal to TEN PERCENT (10%) OF THE AMOUNT DUE and Holder shall not be obligated to accept any past due payment not accompanied by such late charge.

    2.    Attorneys' Fees. Maker promises to pay all costs of collection, including reasonable attorneys' fees of fifteen (15%) percent of the outstanding principal, if this Note is collected by or through an attorney at law.

    3.    Prepayment. This Note may be prepaid in whole or in part.

    4.    Default. If Maker (i) fails to make the payment required by this Note within fifteen (15) days of receipt of written notice of failure to pay when due from Holder; (ii) becomes insolvent, commits any act of bankruptcy, fails to dismiss an involuntary petition of bankruptcy within thirty (30) days of its filing; or (iii) should have a receiver appointed for any of its property, then, in any such event, at the option of Holder hereof, at any time thereafter, without further notice or demand, the unpaid principal of this Note shall at once become due and payable and the unpaid principal shall bear interest at the Default Rate (as hereinafter defined) thereafter. Failure to exercise any of said options shall not constitute a waiver on the part of Holder of the right to exercise the same at any other time. "Default Rate" shall mean an interest rate of fifteen percent (15%) per annum.

    5.    Notices. All notices, demands or requests hereunder shall be given in writing and hand delivered, sent by certified mail or telecopy to the following addresses:

            Holder:        The Casper R. Callen Trust
                            618 East Broughton Street
                            Savannah, Georgia 31401

            Maker:         Gem Ventures, Inc.
                            P.O. Box 551260
                            Jacksonville, Florida 32255

6. _Waiver_. Maker and Maker's successors and assigns hereby expressly waive presentment for payment, demand, notice of demand, notice of dishonor, protest, notice of protest, diligence in collection and all other notices or demands whatsoever with respect to this Note or the enforcement hereof except as expressly provided for herein, and hereby consents to any and all indulgences granted by Holder, or any substitution, exchange or release of collateral permitted by Holder, all without in any way modifying, altering, releasing, affecting or limiting the validity of the indebtedness evidenced hereby or impairing any of Holder's rights following a default hereunder. No failure to accelerate the debt evidenced hereby by reason of default from time to time shall be construed (i) as a novation of this Note or as a reinstatement of the indebtedness evidenced hereby or as a waiver of such right of acceleration or of the right of Holder thereafter to insist upon strict compliance with the terms of this Note, or (ii) to prevent the exercise of such right of acceleration or any other right granted hereunder or by the laws of the United States or any State thereof; and Maker hereby expressly waives the benefit of any statute or rule of law or of equity now provided, or which may hereafter be provided, which would produce a result contradictory to or in conflict with the foregoing. No extension of the time for payment of this Note or any installment due hereunder, made by agreement with any person now or hereafter liable for the payment of this Note, shall operate to release, discharge, modify, change or affect the original liability of Maker under this Note, either in whole or in part, unless Holder agrees otherwise in writing. This Note may not be changed orally, but only by agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

7. _Exemptions_. Maker hereby waives and renounces for Maker and Maker's heirs, executors, successors and assigns, all rights to the benefits of any statute of limitations and any moratorium, reinstatement, marshaling, forbearance, valuation, stay, extension, redemption, appraisement, exemption or homestead now provided, or which may hereafter be provided by the Constitution or laws of the United States of America or of any State thereof to and in their property, real and personal, against the enforcement and collection of the obligations evidenced by this Note. Maker hereby transfers, conveys and assigns to Holder a sufficient amount of such homestead or exemption as may be set apart in bankruptcy, to pay this Note in full, with all costs of collection, and does hereby direct any trustee in bankruptcy having possession of such homestead or exemption to deliver to Holder a sufficient amount of property or money set apart as exempt to pay the indebtedness evidenced hereby, or any renewal hereof, and does hereby irrevocably appoint Holder the attorney-in-fact for Maker to claim any and all homestead exemptions allowed by law.

8. _Governing Law and Related Matters_. This Note is intended to constitute a contract under and shall be construed, interpreted and enforced in accordance with the laws of the State of Georgia. If any provision of this Note shall be deemed unenforceable under applicable law, such provision shall be ineffective, but only to the extent of such unenforceability, without invalidating the remainder of such provision or the remaining provisions of this Note. If more than one person signs this Note as a maker, each shall be jointly and severally liable hereunder. All of the terms and provisions of this Note shall be applicable to and be binding upon each and every maker, endorser, surety, guarantor and all other persons who are or may become liable for the payment hereof and their heirs, personal representatives, successors or assigns.

9. _Avoidance of Usury_. If from any circumstances whatsoever, fulfillment of any provision of this Note or of any other instrument evidencing or securing the indebtedness evidenced hereby, at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, then _ipso facto_, the obligation to be fulfilled shall be reduced to the limit of such validity, so that in no event

shall any exaction be possible under this Note or under any other instrument evidencing or securing the indebtedness evidenced hereby, that is in excess of the current limit of such validity, but such obligations shall be fulfilled to the limit of such validity. In determining whether or not any rate of interest hereunder exceeds the highest lawful rate, Maker and Holder agree and intend that all sums paid hereunder which are deemed interest for the purposes of determining usury, shall be prorated, allocated or spread in equal parts over the longest period of time permitted under the applicable laws of the State of Georgia.

      10.    <u>Time of Essence</u>. Time is of the essence of this Note.

      11.    <u>Inurement</u>. This Note shall bind and inure to the benefit of Maker and Holder and their respective heirs, executors, successors, assigns and legal representatives, whether by voluntary action or by operation of law.

      12.    <u>Captions</u>. The captions of the paragraphs of this Note are for convenience only and are not intended to be nor shall be construed as being a part hereof and shall not limit, expand or otherwise affect any of the terms hereof.

[Signature page follows]

SIGNED, SEALED AND DELIVERED by Maker as of the day and year first above set forth.

**Gem Ventures, Inc.,**
a Florida corporation

By: _____

Name: Neil Morris

Title: _____

Gem Ventures, Inc.